**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 03-2123

MANUEL SIERRA-CASTILLO, also
known as Manuel Dominguez-Castillo,

Defendant-Appellant.

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-02-2065-JC)**

Carlos Ibarra-Aguirre, Assistant Federal Public Defender, Las Cruces, New
Mexico, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States
Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-
Appellee.

Before **SEYMOUR**, **PORFILIO**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Defendant-appellant Manuel Sierra-Castillo pleaded guilty to illegal reentry following a conviction for a felony in violation of 8 U.S.C. § 1326(a)(1)–(2) and 1326(b)(1). On appeal, he argues that the district court erred in denying him downward departures on grounds of exceptional family circumstances and overrepresentation of criminal history. In supplemental briefing, he further argues that his sentence under the United States Sentencing Guidelines ("U.S.S.G.") is contrary to the Supreme Court's holding in *United States v. Blakely*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005). This court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because the district court's error in denying the downward departures was harmless and the court's *Booker* error does not satisfy the standard for plain-error review, this court **affirms** Sierra-Castillo's sentence.

## II. BACKGROUND

Sierra-Castillo's base offense level for illegal reentry following a conviction for a felony was eight. U.S.S.G. § 2L1.2(a) (2002).[1] This offense level was enhanced by sixteen levels pursuant to § 2L1.2(b)(1)(A)(ii) of the Guidelines because of Sierra-Castillo's prior conviction for attempted sexual

---

[1]Because Sierra-Castillo was sentenced under the 2002 version of the United States Sentencing Guidelines, all citations to the Guidelines refer to the 2002 version unless otherwise specified.

assault. It was reduced by three levels for acceptance of responsibility pursuant to § 3E1.1(b), resulting in a final offense level of twenty-one. Based on the prior attempted sexual assault conviction and another prior conviction for burglary, Sierra-Castillo's criminal history category was III. His sentencing range under the Guidelines was therefore forty-six to fifty-seven months.

Sierra-Castillo moved for a downward departure on grounds of exceptional family circumstances, arguing that his common-law wife suffered from breast cancer and that his incarceration would deprive her of needed financial and emotional support during her illness. He also asked for a departure based on overrepresentation of criminal history on the ground that his conviction for attempted sexual assault was nearly fifteen years old at the time of his illegal reentry. The district court denied both departures, stating:

> [I]t's difficult for me to see how he has left the heartland . . . , and it doesn't impress me as being aberrant behavior in this case. I'm sympathetic to his wife's medical condition. Unfortunately, I'm faced with that frequently enough that I'm afraid that likely doesn't leave the heartland either, in this part of the jurisdiction.

The court sentenced Sierra-Castillo to forty-six months of incarceration, the low end of the Guidelines range.

## III.  DISCUSSION

### A.    Downward Departures[2]

Sierra-Castillo argues that in considering his motion for downward

departures, the district court erroneously defined the heartland as "this part of the

jurisdiction" (i.e., the southern part of the District of New Mexico).  He cites

*United States v. Reyes-Rodriguez* for the proposition that the heartland is instead

properly defined with reference to all criminal defendants nationwide.  344 F.3d

1071, 1074 n.1 (10th Cir. 2003).  The government responds that this court lacks

jurisdiction to review the district court's denial of a downward departure, and that

the district court's refusal to downwardly depart was in any event justified.

---

[2]Although the Supreme Court in *United States v. Booker* excised the portion of the Sentencing Reform Act making the Guidelines mandatory, the Court noted that district courts must still "consult [the] Guidelines and take them into account when sentencing."  125 S. Ct. 738, 767 (2005); *see also United States v. Doe*, 398 F.3d 1254, 1257 n.5 (10th Cir. 2005).  The Guidelines provide for departures from the applicable sentencing range in certain specified situations.  *See* U.S.S.G. §§ 5K1.1–3.1 (2004).  Although district courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range, they should also continue to apply the Guidelines departure provisions in appropriate cases.  *See United States v. Crosby*, 397 F.3d 103, 111-12 & 111 n.9 (2d Cir. 2005); *see also Booker*, 125 S. Ct. at 750-51 (discussing the role of departures under the Guidelines).  This court reviews *de novo* the district court's legal interpretation of the Guidelines, including interpretation of departure provisions.  *See Doe*, 398 F.3d at 1257-58 & 1257 n.5; *see also United States v. Villegas*, --- F.3d ----, 2005 WL 627963, at *2-5 (5th Cir. Mar. 17, 2005); *United States v. Hazelwood*, 398 F.3d 792, 795, 800-01 (6th Cir. 2005).

### 1. Jurisdiction

Pursuant to 18 U.S.C. § 3742(a), this court has jurisdiction to review a defendant's appeal of a sentence that was (1) "imposed in violation of law," (2) "imposed as a result of an incorrect application of the sentencing guidelines," (3) imposed as a result of the granting of an upward departure, or (4) "imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." *See United States v. Castillo*, 140 F.3d 874, 887-88 (10th Cir. 1998).[3] This court has no jurisdiction, however, to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure. *Id.* at 887. A district court is presumed to understand that it has discretion to downwardly depart unless the court unambiguously states that it lacks such discretion. *United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir. 1999). If the district court's language is ambiguous, this Court treats the case "as though the judge was aware of his or her

---

[3]*Booker* excised the statutory provision of the Sentencing Reform Act providing for the standard of review of sentences on appeal, 18 U.S.C. § 3742(e), but left intact the section providing for appellate review of sentences, 18 U.S.C. § 3742(a). *See Booker*, 125 S. Ct. at 765 (noting that § 3742(a) continues to provide for appellate review of Guidelines sentences). Pursuant to § 3742(a), this court therefore continues to have the same jurisdiction to review Guidelines sentences as it had before the Supreme Court's decision in *Booker*. *See Doe*, 398 F.3d at 1256; *see also United States v. Ruiz-Alonso*, 397 F.3d 815, 817 (9th Cir. 2005) (applying § 3742(b)).

legal authority to depart but chose instead, in an exercise of discretion, not to depart." *Id.*

The government argues that this court lacks jurisdiction to review the district court's denial of Sierra-Castillo's motion for downward departures because the court did not unambiguously state that it was without authority to depart. The cases cited by the government, however, hold only that "when a sentence is within the guideline range *and is not imposed in violation of law, or as a result of an incorrect application of the guidelines*, then the district court's refusal to exercise its discretion to depart downward from the guideline range is not appealable." *United States v. Davis*, 900 F.2d 1524, 1530 (10th Cir. 1990) (footnotes omitted, emphasis added); *see United States v. Rodriguez*, 30 F.3d 1318, 1319 (10th Cir. 1994). These cases do not purport to limit this court's authority to review legal error in the district court's interpretation of the Guidelines, even if those errors involve the interpretation of departure provisions. *See* 18 U.S.C. § 3742(a)(1)–(2); *United States v. Segien*, 114 F.3d 1014, 1024 n.7 (10th Cir. 1997); *United States v. Lacey*, 86 F.3d 956, 962 n.2 (10th Cir. 1996) ("While the government is correct that we will not review a district court's *discretionary* choice not to depart downward, there is no similar impediment to appellate review where a sentence is imposed . . . in violation of law, or as a result of an incorrect application of the guidelines." (citation omitted)).

This court has found jurisdiction, for example, over a defendant's appeal claiming that the district court considered a prohibited factor under the Guidelines in denying a downward departure. *United States v. Guidry*, 199 F.3d 1150, 1161 (10th Cir. 1999). Other cases have found jurisdiction over different legal questions in the application of Guidelines downward departure provisions. *See, e.g.*, *United States v. Chavez-Valenzuela*, 170 F.3d 1038, 1039 (10th Cir. 1999); *United States v. Valdez*, 158 F.3d 1140, 1141-42 (10th Cir. 1998); *United States v. James*, 157 F.3d 1218, 1219 (10th Cir. 1998).

There are both legal and factual components to a district court's definition of the applicable heartland. "Although a district court's decision to depart usually involves an essentially factual inquiry, in some cases the determination that a defendant falls outside an applicable guideline heartland will not be based primarily on the court's judgment about the facts of the case, but will involve the court's determination as to what constitutes a guideline's heartland." *United States v. Collins*, 122 F.3d 1297, 1303 n.4 (10th Cir. 1997), *called into question on other grounds by United States v. Jones*, 332 F.3d 1294, 1299 (10th Cir. 2003); *see also United States v. Jose-Gonzalez*, 291 F.3d 697, 705 (10th Cir. 2002). The district court's definition of the geographic scope of the Guidelines is an example of an essentially legal question that this court reviews *de novo*. Unlike the cases relied upon by the government, addressing the Guidelines question in this case

would not require this court to interfere with the district court's exercise of discretion by "substitut[ing] its judgment for that of the sentencing court." *Castillo*, 140 F.3d at 888 (quotation omitted); *United States v. Mariano*, 983 F.2d 1150, 1153-54 (1st Cir. 1993) ("[T]he limited appellate review that is available serves to correct errors which are essentially 'legal' in nature, but does not brook interference with a sentencing court's exercise of factfinding functions or discretion.").

This court therefore has jurisdiction to review the question whether the district court committed legal error in this case.

### 2. Error

This court reviews legal conclusions underlying the district court's refusal to depart downward *de novo*. *United States v. Marquez-Gallegos*, 217 F.3d 1267, 1269 (10th Cir. 2000). The district court in denying Sierra-Castillo's motion for downward departures stated that the defendant's circumstances were not outside the heartland "*in this part of the jurisdiction*" (emphasis added). Contrary to the district court's statement, the heartland under the Guidelines is national in scope and is not limited to a particular jurisdiction or portion of a jurisdiction. *Jose-Gonzalez*, 291 F.3d at 704 ("[T]he Guidelines are national in scope, intended to provide a measure of uniformity throughout the country, so what may be common in one district for a period of time may still be unusual for the nation as

a whole and outside the heartland for the offense.")  The district court therefore committed legal error in its definition of the heartland.

### 3. Harmlessness

In *Williams v. United States*, the Supreme Court held that "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error . . . did not affect the district court's selection of the sentence imposed." 503 U.S. 193, 203 (1992).  This court therefore must examine the question whether the district court would have denied the downward departures for family circumstances and overrepresentation of criminal history even if it had applied the proper heartland.

#### a. Family Circumstances

Sierra-Castillo's first proposed ground for a downward departure was that he needed to provide support for his common-law wife, who suffered from breast cancer.  The 2002 version of the Guidelines provides that a defendant's "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S.S.G. § 5H1.6.  Family circumstances are therefore a discouraged ground for departure under the Guidelines.  *United States v. Gauvin*, 173 F.3d 798, 807 (10th Cir. 1999).  A departure based on the need to care for a family member is warranted only where

the "defendant [is] the only individual able to provide the assistance a family member needs." *Reyes-Rodriguez*, 344 F.3d at 1074-75 (quotation omitted).

The defendant has the burden of proving entitlement to a downward departure. *United States v. Archuleta*, 128 F.3d 1446, 1449-50 (10th Cir. 1997). In this case, Sierra-Castillo asserted in the district court only that his incarceration would deprive his wife of financial and emotional support during her illness. His request for departure due to family circumstances was not supported by any evidence and there is no suggestion in the record that he was the only person capable of caring for his wife. He therefore failed to meet his burden of establishing that a departure was warranted. *See Reyes-Rodriguez*, 344 F.3d at 1075-76. The district court's error was harmless.

### b. *Overrepresentation of Criminal History*[4]

Sierra-Castillo also sought a departure based on the argument that his criminal history category significantly overrepresented the seriousness of his offenses because his prior felony conviction for attempted sexual assault was nearly fifteen years old at the time he illegally reentered the country. Downward

---

[4]The government argues that the district court's error of limiting the heartland to "this part of the jurisdiction" was limited to the issue of family circumstances and did not infect the court's consideration of a departure based on Sierra-Castillo's criminal history. Although it is unlikely that the district court would have defined the geographic heartland differently in each of the two departure provisions at issue, this court need not definitively decide the issue because the error in any case was harmless.

departures under the Guidelines are warranted only when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (quotation omitted).[5] The Guidelines acknowledge that the defendant's criminal history score is "unlikely to take into account all the variations in the seriousness of criminal history that may occur." U.S.S.G.

---

[5]The Supreme Court in *Booker* excised the provision of the Sentencing Reform Act providing this standard for departures. *See Booker*, 125 S. Ct. at 764 (excising 18 U.S.C. § 3553(b)(1)). Section 5K2.0, which provides the standard for departures under the Guidelines, cites to and explicitly incorporates language from the excised statutory provision. *See* U.S.S.G. § 5K2.0. That the Supreme Court excised the statute on which § 5K2.0 is based, however, does not call into question the continuing validity of § 5K2.0. That section provides the general standard for departures under the Guidelines, on which the specific departure provisions in §§ 5K2.0–5K2.23 are derived. *See* U.S.S.G. § 5K2.0 cmt. n.3(A)–(B) (2004). This court has noted that "departures are an integral part of the guideline application process." *United States v. Davis*, 900 F.2d 1524, 1529 (10th Cir. 1990) (quotation omitted); *see also* U.S.S.G. § 5K2.0 cmt. background (2004); *United States v. Burke*, 237 F.3d 741, 744-45 (6th Cir. 2001); *United States v. Franz*, 886 F.2d 973, 977-78 (7th Cir. 1989). The Supreme Court's requirement that district courts continue to "consult" the Guidelines therefore necessarily includes consideration of these Guidelines departure provisions. *Crosby*, 397 F.3d at 111-12 & 111 n.9; s*ee also supra* note 1. The Supreme Court's rationale for excising § 3553(b)(1) was that the statute made the Guidelines mandatory by providing that district courts "shall" impose a sentence within the Guidelines range unless the criteria for a departure were met. *See Booker*, 125 S. Ct. at 764. Continuing to give effect to the borrowed statutory language in § 5K2.0 is not contrary to the holding in *Booker* because nothing in § 5K2.0 purports to make the Guidelines mandatory.

§ 4A1.3, cmt. background.[6]  In contrast to family circumstances, the Guidelines

therefore "explicitly encourage a departure when the district court concludes that

a defendant's criminal history category over-represents the seriousness of the

defendant's criminal history." *Collins*, 122 F.3d at 1304.

Although overrepresentation of criminal history is therefore a permissible

ground for departure under the Guidelines in some cases, any finding that

criminal history is overrepresented must be based on factual circumstances that

themselves constitute permissible grounds for departure. *Id.*  Whether a factual

circumstance is a permissible factor to support a departure is a question of law.

*Id.* at 1303.  If a particular factor is already fully taken into account by the

Guidelines, a downward departure based on that factor is inappropriate. *United*

*States v. Kelly*, 1 F.3d 1137, 1140-41 (10th Cir. 1993) ("If the sentencing court

departs based on a circumstance already fully considered by the Sentencing

Commission, it is an inappropriate grounds for departure."); *see United States v.*

*Whiteskunk*, 162 F.3d 1244, 1248-50 (10th Cir. 1998).

The age of a prior conviction, standing alone, is a factor that is already

fully accounted for by the Guidelines.  *See* § 4A1.2(e)(1) (providing that certain

---

[6]Despite the placement of § 4A1.3 in chapter four of the Guidelines, this court has held that  "departures under section 4A1.3 are not beyond the purview of section 5K2.0." *United States v. Collins*, 122 F.3d 1297, 1305 (10th Cir. 1997) (quotation omitted).

offenses occurring more than fifteen years prior to commencement of the present offense are not counted in computing a defendant's criminal history category). Although this court in *Collins* did consider the age of a prior conviction as one of several circumstances supporting a departure, the defendant in that case did not base his downward departure argument *solely* on the age of his conviction. *Collins*, 122 F.3d at 1307-08. The defendant in *Collins* also argued that the prior offense was a relatively moderate one for which he received a lenient sentence, that his relative age and infirmity suggested a lower likelihood of recidivism, and that the conduct on which the prior conviction was based occurred prior to the ten-year time limit under the Guidelines. *Id.* at 1308.[7] In contrast, Sierra-Castillo does not argue that any factors other than the relative age of his conviction make his criminal history in any way exceptional or unique.[8] Because the age of a prior

---

[7]The Guidelines provide for a ten-year limit on prior convictions when the conviction resulted in a sentence of one year and one month or less. U.S.S.G. § 4A1.2(e)(2). Because Sierra-Castillo was sentenced to ten years in prison for attempted sexual assault, the fifteen-year limit instead applies. *See* § 4A1.2(e)(1).

[8]If anything, Sierra-Castillo's circumstances counsel *against* a downward departure based on his criminal history category. Section 4A1.3 authorizes departures for overrepresentation of criminal history only when "a defendant's criminal history category *significantly* over-represents the seriousness of a defendant's criminal history." § 4A1.3 (emphasis added). The Guidelines give as an example of such a case: "a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." *Id.* In contrast to the minor crimes given as an example in the Guidelines, Sierra-Castillo was convicted of attempted sexual assault and sentenced to ten years in prison. While he was still

(continued...)

-13-

conviction, standing alone, is a factor that is fully provided for by the Guidelines, it does not constitute a valid basis for a downward departure. *See United States v. Fletcher*, 15 F.3d 553, 557 (6th Cir. 1994) (noting that although the age of the defendant's convictions standing alone did not warrant a downward departure, the district court could take the age of the convictions into account when considering a departure under § 4A1.3); *cf. United States v. Caldwell*, 219 F.3d 1186, 1193-94 (10th Cir. 2000) (noting that the relatively minor nature of a prior offense was a factor to consider under § 4A1.3 but was not, standing alone, a sufficient basis for departure). The district court's error was therefore harmless.

### c. *Combination of Factors*

Sierra-Castillo also argued before the district court that he was entitled to a downward departure based on the combination of his family circumstances and criminal history. Combining two invalid departure grounds, however, cannot give

---

[8](...continued)
on parole for this offense, he then committed a burglary and was sentenced to eight more years of imprisonment. *See United States v. Bradford*, 78 F.3d 1216, 1223-24 (7th Cir. 1996) (holding that a departure under § 4A1.3 is "warranted only in those instances where defendants [have] steered clear of crime for a substantial period of time and whose prior offenses were relatively minor in terms of violence or danger to the community"); *United States v. Adams*, 316 F.3d 1196, 1199 (11th Cir. 2003) (concluding that a district court would not have granted defendant's motion for a downward departure based on the age of prior convictions when there was evidence of intervening criminal behavior). Although Sierra-Castillo also argues exceptional family circumstances as a basis for departure, this factor is entirely unrelated to his criminal history. *See* Section III.A.3.a, *supra*.

rise to a valid ground for departure. *See United States v. Contreras*, 180 F.3d 1204, 1213 (10th Cir. 1999).

**B.     Booker Error**

In supplemental briefing, Sierra-Castillo argues that his sentence under the Guidelines violates the Supreme Court's holding in *United States v. Blakely*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005). The Supreme Court in *Booker* held that mandatory application of the Sentencing Guidelines violates the Sixth Amendment when judge-found facts, other than the fact of prior convictions, are employed to enhance a defendant's sentence. *Booker*, 125 S. Ct. at 755-56.

The only Guidelines enhancement applied to Sierra-Castillo's sentence was a sixteen-level enhancement based on his prior conviction for attempted sexual assault. As this court noted in *United States v. Gonzalez-Huerta*, a Guidelines enhancement based on the fact of a prior conviction does not implicate the Sixth Amendment concerns on which the holding in *Booker* was based. 403 F.3d 727, 738 (10th Cir. 2005) (en banc). Nevertheless, Sierra-Castillo's sentence does implicate *Booker*'s remedial holding, making the Guidelines advisory in all cases pending on direct review. *See id.* at 731-32.

Because Sierra-Castillo did not raise a challenge to the constitutionality of his sentence before the district court, his argument on appeal is subject to review

for plain error. *United States v. Cotton*, 535 U.S. 625, 629-31 (2002); *Gonzalez-Huerta*, 403 F.3d at 732. This court has discretion to recognize plain error that was not raised in the district court when (1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Cotton*, 535 U.S. at 631-32. In *Gonzalez-Huerta*, this court held that sentencing a defendant under the mandatory Guidelines scheme is error that is plain and thus satisfies the first two prongs of the plain-error test. *Gonzalez-Huerta*, 403 F.3d at 732. This court need not answer the question whether a defendant can show prejudice under the third prong of the plain-error test if the defendant cannot also demonstrate that the district court's error seriously affect the fairness, integrity, or public reputation of judicial proceedings (the so-called "fourth prong" of the plain-error test). *See Cotton*, 535 U.S. at 632-33; *Gonzalez-Huerta*, 403 F.3d at 736.

*Gonzalez-Huerta* held that the district court's error in that case failed to satisfy the fourth plain-error prong. *Gonzalez-Huerta*, 403 F.3d at 737. The court in doing so relied on the fact that, like Sierra-Castillo, the defendant had not suffered Sixth Amendment error at sentencing and that the sentencing error was therefore "only error insofar as it runs afoul of the Court's *remedy* for the unconstitutional implications of the Guidelines." *Id.* at 738; *see also United States v. Trujillo-Terrazas*, No. 04-2075, --- F.3d ----, 2005 WL 880896, at *4

-16-

(10th Cir. Apr. 13, 2005) ("[A] non-constitutional *Booker* error is 'error' at all only as the serendipitous consequence of the severability analysis the Supreme Court employed to correct the constitutional infirmity created by the combination of judicial factfinding and mandatory application of the Guidelines."). The court emphasized that the defendant has the burden of demonstrating that the fourth prong of the plain-error test has been satisfied, and that "sentencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended." *Gonzalez-Huerta*, 403 F.3d at 737, 739.

*Gonzalez-Huerta* establishes the principle that failing to correct non-Sixth Amendment *Booker* error when the defendant has failed to preserve the error in the district court will rarely be found to seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 738-39. Those cases where this court has found the fourth plain-error prong to be met involved fairness issues not present in this case. In *United States v. Trujillo-Terrazas*, a panel of this court found the test satisfied when an illegal reentry defendant received a sixteen-level enhancement because of a prior conviction for arson. *Trujillo-Terrazas*, 2005 WL 880896, at *1. The arson conviction was based on the defendant's act of tossing a lighted match through a car window and thereby causing $35 in damage. *Id.* The sentencing judge imposed a forty-one month sentence after stating "I don't want to send anybody to jail, and I wish that I

-17-

didn't have to." *Id.* In *United States v. Williams*, the panel found the fourth plain-error prong satisfied where the defendant was sentenced to 210 months in prison for the act of momentarily possessing a handgun that was thrust upon him by the gun's owner. No. 04-3175, --- F.3d ----, 2005 WL 859427, at *8 (10th Cir. Apr. 15, 2005). The district judge in *Williams* stated at sentencing that he felt that the Guidelines sentence was "gross" and "immoral." *Id.* The panel recognized that the fourth plain-error prong in non-Sixth Amendment *Booker* cases is a demanding test, but nevertheless found the test satisfied under the facts of that case. *Id.* at *9.

Like the defendant in *Trujillo-Terrazas*, Sierra-Castillo received a sixteen-level enhancement based on a prior conviction. Rather than the comparatively innocuous nature of the prior conviction in *Trujillo-Terrazas*, however, Sierra-Castillo's conviction was for the very serious crime of attempted sexual assault. Although the district judge stated that he was "sympathetic" to Sierra-Castillo's family circumstances, this comment does not in itself demonstrate that the sentence implicates the kind of fundamental fairness issues necessary to satisfy the fourth plain-error prong. Although the statement might help Sierra-Castillo satisfy the third prong of the plain-error test by showing a reasonable probability that he would have received a lower sentence under an advisory Guidelines system, this court is "bound to treat the third and fourth prongs as independent

inquiries." *Gonzalez-Huerta*, 403 F.3d at 736. For this reason, "[e]ven if a defendant can demonstrate that the district court felt particular sympathy for him, and might impose a lesser sentence on remand, failing to correct this type of plain error would not impugn the fairness, integrity, and public reputation of judicial proceedings." *Trujillo-Terrazas*, 2005 WL 880896, at *4.

There are no issues comparable to those in *Williams* and *Trujillo-Terrazas* that would implicate core notions of justice in this case. Because Sierra-Castillo cannot satisfy the fourth prong of the plain-error test, his sentence must be affirmed.

## V.     CONCLUSION

Sierra-Castillo's renewed motion to file a supplemental brief is **GRANTED**. For the reasons set out above, Sierra-Castillo's sentence is **AFFIRMED**.